## UNITED STATES COURT OF INTERNATIONAL TRADE

BELNICK LLC,

Plaintiff,

v.

UNITED STATES OF AMERICA;
OFFICE OF THE UNITED STATES TRADE
REPRESENTATIVE; ROBERT E. LIGHTHIZER, U.S.
TRADE REPRESENTATIVE; U.S. CUSTOMS &
BORDER PROTECTION; MARK A. MORGAN, U.S.
CUSTOMS & BORDER PROTECTION ACTING
COMMISSIONER,

Defendants.

Court No. 20-01535

## <u>COMPLAINT</u>

Plaintiff Belnick LLC ("Belnick"), by and through its undersigned counsel, states and alleges as follows:

1.    This action arises from Defendants' use of a limited mechanism to wage a trade war without limits impacting over $500 billion in imports from the People's Republic of China. Defendants unlawfully escalated that trade war by imposing tariffs on products covered by so-called "List 3." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).

2.    Defendants are not authorized by the Trade Act of 1974 ("Trade Act") to wage a vast trade war for however long, and by whatever means, they choose. The Office of the United States Trade Representative ("USTR") conducted an investigation of China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411).

Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what, if any, action to take based on that investigation within 12 months after its initiation.  USTR did not issue List 3 (or subsequent List 4) within that window.  USTR cannot after the fact invoke its "modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) to justify List 3.  USTR is not permitted by Section 307 of the Trade Act to expand the imposition of tariffs to other imports from China for reasons not arising from the unfair intellectual property policies and practices that were the subject of its investigation under Section 301 of the Trade Act.  They did just that, however, promulgating the List 3 and List 4 duties in response to China's retaliatory duties and other unrelated issues, without further investigation and without identifying increased harm from the investigated policies and practices.

3.      Defendants also promulgated List 3 and List 4 tariff action in an arbitrary manner that violates the Administrative Procedure Act ("APA").  Specifically, USTR (1) failed to provide adequate opportunity for comment by, for example, requiring interested parties to submit affirmative and rebuttal comments on the same day; (2) failed to consider relevant factors when making its decision by, for example, failing to analyze any supposed "increased burden" imposed on U.S. commerce by the originally investigated unfair policies and practices; and (3) failed to connect relevant facts to its decisions.  Instead, despite receiving thousands of comments on its proposed List 3 and List 4, USTR said nothing at all regarding how those comments affected its final promulgation of these Lists.  USTR's barely went through the motions, and its pre-baked decision making utterly fails to meet the standards Congress envisioned when it created the APA.

4.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, and order Defendants to refund (with interest) any duties paid by Belnick pursuant to List 3 and List 4.

38396043v2

## JURISDICTION

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1581(i)(1)(B), (D) which confers "exclusive jurisdiction" to the Court over "any civil action

commenced against the United States, its agencies, or its officers, that arises out of any law of the

United States providing for" "tariffs, duties, fees, or other taxes on the importation of

merchandise for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(1)(B), and

"administration and enforcement with respect to the matters referred to in subparagraphs (A)

through (C) of this paragraph and subsections (a)–(h) of this section," 28 U.S.C. § 1581(i)(1)(D).

## PARTIES

6.      Plaintiff is an U.S. importer of different types of products including furniture,

swivel seats, chairs, parts of furniture, and natural cork. Plaintiff has made numerous entries of

various items from China classified under HTSUS 9401.30, 9401.71, 9403.20, 9401.79, 9401.80,

9403.70, 9401.61, 9403.89, 9403.30, 9403.90, 9403.60, 9401.69, 9401.90, 9401.53, 9401.70,

9401.52, 4016.91, 9610.00, 9403.10, 9817.00, 9401.20, and 4502.00, which are subject to the

additional *ad valorem* duties under List 3 and List 4 (defined below). Over the past two years,

Plaintiff paid a total amount of Section 301 duties equaling more than $31.9 Million.

7.      Defendant United States of America received the disputed tariffs and is the

statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B), (D).

8.      The Office of the USTR is an executive agency of the United States charged with

investigating foreign countries' trade practices under Section 301 of the Trade Act and

implementing "appropriate" responses, subject to the direction of the President.   USTR

conducted the Section 301 investigation at issue and made numerous decisions regarding List 3

and List 4.

9. Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR. In these capacities, he made numerous decisions regarding List 3 and List 4.

10. Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under List 3 and List 4.

11. Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Belnick under List 3 and List 4.

## STANDING

12. Belnick has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; see 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 3 and List 4 adversely affected and aggrieved Belnick because it was required to pay these unlawful duties.

## TIMELINESS OF THE ACTION

13. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B), (D) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

14. This action contests actions taken by Defendants that resulted in List 3 and List 4. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304

4

(Aug. 20, 2019).  Plaintiff's claims accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register*, and on August 20, 2019 for List 4.  *Id.*  This action is thus timely.

## RELEVANT LAW

15.    Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices.    19 U.S.C. § 2411(b).    If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice.  *Id.* § 2411(b), (c)(1)(B).

16.    Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of an underlying investigation.  *Id.* § 2414(a)(1)(B), (2)(B).

17.    Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."  *Id.* § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.    USTR's Investigation

18.    The ongoing trade war between the U.S. and China stemmed from a narrow dispute. On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology.  *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).  The President said that certain Chinese "laws,

38396043v2

policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

19.     Shortly after, on August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

20.     USTR released a report announcing the results of its investigation on March 22, 2018.   OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.   The USTR stated that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17.  USTR said its findings were based on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for

6

purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171. USTR's report did not quantify the burden or restriction imposed on U.S. commerce by these practices.

21.     Also on March 22, 2018, USTR released a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also indicated that, consistent with a directive from the President, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II.     List 1 and List 2

22.     Within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants took a series of steps aimed at remedying the estimated harm to the U.S. economy caused by the investigated unfair practices, and ultimately imposed duties on imports from China covered by the so-called List 1 and List 2.

23.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

38396043v2

*Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  The proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907.  USTR explained that the $50 billion amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

24.     On June 20, 2018, USTR published notice of its final list—commonly known as "List 1"—of products subject to an additional duty of 25% *ad valorem    Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  USTR had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

25.     To "maintain the effectiveness of [the] $50 billion trade action" based on its Section 301 investigation, at the same time that USTR finalized List 1, it announced its intention to impose a 25% *ad valorem* duty on a second proposed list of Chinese products.  *Id.* at 28,712. USTR's proposed "List 2" covered  284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12.

26.     On August 16, 2018, USTR published notice of the final List 2 of products subject to an additional duty of 25% *ad valorem*, comprising "279 tariff subheadings" whose "annual

8

trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

### III.   List 3 and List 4

27.    Tensions between the governments of China and the United States escalated dramatically in response to USTR's announcement of the results of its investigation in March 2018. In the months following the announcement, Defendants drastically expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the amount it had previously deemed "commensurate" with the findings of the original USTR investigation.   Defendants' reasoning was not based on the unfair practices that USTR had investigated, but was instead a reaction to China's retaliatory countermeasures and an array of grievances related to China's role in global politics.

#### A.  List 3

28.    Shortly after President Trump's April 2018 directive to USTR to consider imposing duties on $50 billion in Chinese products, China threatened to impose retaliatory duties on the same value of imports from the United States.  In response, the President "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation."   THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional -proposed-section-301-remedies/.

29.    When USTR published the finalized List 1 in June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated

against the United States.  THE WHITE HOUSE, *Statement by the President Regarding Trade with China* (June 15, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china/ ("The United States will pursue additional tariffs if China engages in retaliatory measures, such as imposing new tariffs on United States goods, services, or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.").

30.     Consistent with this warning, on June 18, 2018, President Trump directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion—even though USTR had not yet implemented List 1 and List 2.  President Trump said that his decision was motivated by China's threatened retaliatory "tariffs on $50 billion worth of United States exports."  THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

31.     USTR acknowledged the purpose of the President's directive, and stated that it would tailor the newly proposed duties to address China's threatened retaliatory measures, rather than the harms identified in its Section 301 investigation.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, while Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property

38396043v2

theft by the Chinese" that were the subject of the Section 301 investigation, proposed duties for a third list of products were necessary to respond to retaliatory and "unjustified tariffs" that China might impose to target "U.S. workers, farmers, ranchers, and businesses").

32.    Despite the President's warnings, China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages ($34 billion in U.S. imports and $16 billion in U.S. imports) on the same dates the United States began collecting its own 25% tariffs pursuant to List 1 (July 6, 2018) and List 2 (August 23, 2018).

33.    In response to China's first round of retaliatory duties, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). USTR set a deadline for initial comments of August 17, 2018; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

34.    In its notice and request for comments, USTR confirmed that China's decision to impose "retaliatory duties" was the primary basis for its proposed action. *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its

refusal to change its acts, policies, and practices"). USTR connected the $200 billion in its proposed action to the retaliatory duties imposed by China on U.S. imports, stating that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Despite citing China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had originally investigated. *See id.*

35. USTR's press statements at the time corroborated the contents of its notice: its proposed action was motivated by China's retaliatory duties. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

36. The same day as Ambassador Lighthizer's statement, President Trump tweeted that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. In the weeks that followed, President Trump expressed his frustration over China's purported manipulation of its currency and national monetary policy, China's retaliatory tariffs, and the trade imbalance between the two nations. *See, e.g.*, @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT),

https://twitter.com/realDonaldTrump/status/1020287981020729344;   @realDonaldTrump,

TWITTER   (July   20,   2018,   8:51   AM   EDT),

https://twitter.com/realDonaldTrump/status/1020290163933630464;   @realDonaldTrump,

TWITTER (July 25, 2018, 7:20 AM EDT),  https://twitter.com/realDonaldTrump/status/

1022079127799701504;  @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT),

https://twitter.com/realDonaldTrump/status/1022074252999225344.

37.    Within days of the President's tweets, Ambassador Lighthizer announced that, in

light of China's retaliatory duties, USTR would propose to increase the additional (List 3) duty from

10% to 25% *ad valorem*.  Instead of addressing the practices that USTR investigated pursuant to

Section 301 of the Trade Act, the Ambassador stated that China "[r]egrettably . . . has illegally

retaliated against U.S. workers, farmers, ranchers and businesses."   OFFICE OF THE UNITED

STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer

on Section 301 Action* (Aug. 1, 2018), *available at*  https://ustr.gov/about-us/policy-offices/press-

office/press-releases/2018/august/statement-us-trade-representative.

38.    Soon after, at the direction of President Trump, USTR formally proposed "raising

the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent."

*Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to

Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual

Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).  USTR also set dates for a

public hearing to take place over six days ending on August 27, 2018.  *See id.*; *see also* OFFICE

OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section

301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-

us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

39.     USTR also adjusted the deadlines for the submission of both *initial and rebuttal* written comments from the public to the same day—September 6, 2018—less than a month later. 83 Fed. Reg. at 38,761.  That change, which deviated from USTR's past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to initial comments filed by other parties.   In addition, USTR limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.     Despite   those   obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments.  *Id.*

40.     A mere eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China."   THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.   Once again, President Trump made clear that his decision was motivated by China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties), and he immediately vowed to proceed with "phase three" of the plan—an *additional $267 billion in tariffs*—"if China takes retaliatory action against our farmers or other industries." *Id.*

41.     After President Trump's announcement, USTR published notice of the final "List 3." 83 Fed. Reg. at 47,974.  List 3 entries would be subject to a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019.  *Id.*  USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018.  *Id.*  USTR responded to neither the more than 6,000 comments that it received nor the testimony provided by roughly 350 witnesses. *Id.*

14

42.     As legal justification for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted).  USTR claimed that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.*  USTR also cited Section 307(a)(1)(C) of the Trade Act, stating that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

43.     In the ensuing months, China and the United States engaged in trade negotiations in an attempt to resolve their differences.  Some progress was made in those negotiations, and the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

44.     The negotiations ultimately fell apart and, in May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019,

15

depending on the date of export.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  USTR's notice cited China's "retreat[ing] from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.  *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459.  This time, however, USTR did not seek public comment at all, but simply announced that the increase would occur.  *Id.*

45.     In light of the fact that that List 3 would cause substantial harm to U.S. companies, consumers, and the U.S. economy, in June 2019, USTR invited the public to seek exclusions from List 3 duties on a product-specific basis.  *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

46.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the few products for which USTR extended exclusions it granted from the List 3 duties. *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**B.  List 4**

47.     On May 17, 2019, only eight days after USTR published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with still

16

another list—List 4—covering even more products subject to additional duties.  Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019).  USTR said that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

48.     Similar to the process for List 3, USTR invited the public to comment on proposed List 4 and participate in a hearing.  *Id.*  The public submitted nearly 3,000 written comments.  Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001.  The timeline for participating in the hearing left little room for meaningful input:  witnesses were required to submit drafts of their testimony by June 10, 2019, seven days before the deadline for written comments, and USTR again limited witnesses to five minutes of testimony at the hearing.  *Id.*

49.     On August 1, 2019, President Trump announced that, as result of China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*.  @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realDonaldTrump/status/1156979446877962243  (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

50.     On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty on roughly $120 billion worth of goods, effective September 1, 2019.  *Id.* at 43,304.  List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019.  *Id.* at 43,305.  As before, USTR addressed neither the nearly 3,000 comments submitted nor any of the testimony provided by witnesses, other than to nominally state that its determination "takes account of the public comments and the testimony." *Id.*

51.     As legal justification for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, noting that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate."  *Id.* at 43,304.  But USTR did not find any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, and merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including imposing retaliatory tariffs on U.S. imports, retreating from negotiated commitments, and devaluing its currency.  *Id.*

52.     Then, just ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR claimed that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods."  *Id.* at 45,822.  USTR once again

referred to China's retreat from negotiation commitments and devaluation of its currency as the basis for its action. *Id.*

53.     On December 18, 2019, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B as a result of successfully negotiating a limited trade deal with China.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019).  USTR also stated that it intended to reduce the tariff rate applicable to products covered by List 4A.  *Id.*   That action ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

54.     In the ensuing months, the United States and China implemented the limited trade deal that was negotiated near the end of 2019.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach.  During that time, Defendants declined to impose additional duties on imports covered by List 4B, presumably as a result of China's agreement to some new, unrelated obligations under the trade deal.

55.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint.  While the proposed duties on products covered by List 4B remain suspended, President Trump has continued to threaten to impose them if China does not meet its obligations under the limited trade deal.  *See, e.g.*, @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China

Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

## STATEMENT OF CLAIMS

### COUNT I
### (DECLARATORY JUDGMENT – VIOLATION OF THE TRADE ACT OF 1974)

56.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

57.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

58.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4 tariffs.

59.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b).  USTR did not predicate its actions giving rise to List 3 and List 4 on any such determination.

60.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B).  USTR originally did that for List 1 and List 2, but its action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

61.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce

from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act does not, however, permit Defendants to increase tariffs for other reasons unrelated to the acts, policies, or practices that were the subject of USTR's investigation pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war disconnected from those findings.

62.     Belnick is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and contrary to law.

## COUNT II
### (VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT)

63.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

64.     Defendants' promulgation of List 3 and List 4 was improper and is reviewable under 5 U.S.C. § 702.

65.     As a result of this improper promulgation, Belnick has "suffer[ed] a legal wrong of agency action" and is "adversely affected or aggrieved by agency action" and therefore "is entitled to judicial review thereof" under 5 U.S.C. § 702.

66.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

67.     Defendant's promulgation of List 3 and List 4 was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction,

authority or limitations, or short of statutory right," and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D)

a.      First, USTR may only modify action taken pursuant to Section 301 if "the burden or restriction on United States commerce of the denial rights, or of the acts, policies, and practices, that are the subject of such action has increased or decreased."   19 U.S.C. § 2417(a)(1)(B).   USTR has never made a quantified showing that the "the burden…increased." Without such a showing, USTR exceeded its statutory authority by promulgating List 3 and List 4.

b.      Second, USTR only ever quantified a $50 billion on U.S. commerce based on its primary investigation under Section 301.  In the absence of a showing of increased burden, or of the necessity of disproportionate measures to prevent the originally quantified burden, the imposition of duties on a combined $500 billion worth of goods between List 3 and List 4 is arbitrary.

c.      Third, to modify action taken pursuant to Section 301, USTR must "consult . . . with representatives of the domestic industry concerned, and shall provide opportunity for the presentation of views by other interested persons affected by the proposed modification or termination concerning the effects of the modification or termination and whether any modification or termination of the action is appropriate." 19 U.S.C. § 2417(a)(2).  By unduly compressing this process and requiring that primary and rebuttal comments be submitted on the same day, and drafts of testimony be submitted a week before comments were submitted, USTR destroyed any illusion that the notice and comment process was sufficient, adequate, considered, or discussed.  USTR confirmed this inadequacy when, in promulgating its final List 3 and List 4, it did not mention, discuss, or refer to any of the approximately 9,000 comments submitted and

approximately 700 witnesses who testified in connection with these Lists.  Without meaningfully following the procedures set out in 19 U.S.C. Section 2417(a)(2), USTR's promulgation of List 3 and List 4 was in excess of its statutory authority.

       d.     Fourth, the President's statements indicate that the basis for List 3 and List 4 was more than the subject of USTR's original investigation under Section 301, and USTR's own statements confirm that.  The President's directives themselves were capricious, and USTR's acting on those directives without quantifying increased burden or meaningfully considering comments and testimony was an abuse of discretion and exceeded USTR's statutory authority.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff pray that this Court enter judgment as follows:

(1)     declare that Defendants' actions resulting in tariffs on products covered by List 3 and  List 4 are unauthorized by, and contrary to, the Trade Act;

(2)     declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4 in violation of the APA;

(3)     vacate the List 3 abd List 4 rulemaking;

(4)     order Defendants to refund, with interest, any duties paid by Belnick pursuant to List 3 and List 4;

(5)     permanently enjoin Defendants from applying List 3 and List 4 against Belnick and collecting any duties from Plaintiff pursuant to List 3;

(6)     award Belnick their costs and reasonable attorney fees under the Equal Access to Justice Act and related authorities; and

(7)    grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter

**CURTIS MALLET-PREVOST, COLT & MOSLE LLP**
1717 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
202-452-1717

*Counsel for Belnick LLC*

24